UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

XTONE, INC.,

                    Plaintiff,

         v.

AMAZON.COM, INC., AMAZON WEB
SERVICES, INC., and AMAZON.COM
SERVICES LLC,

                    Defendants.

No. 2:26-cv-00653-JHC

**AGREEMENT REGARDING
DISCOVERY OF
ELECTRONICALLY STORED
INFORMATION AND ORDER**

**NOTE ON MOTION CALENDAR:
JUNE 5, 2026**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.      General Principles**

1.      An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.  The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan.  To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

ESI PROTOCOL
(2:26-cv-00653-JHC)                                          1

**B.      ESI Disclosures**

1.      Within thirty (30) days of entry of this Order, or at a later time if agreed to by the parties, each side shall disclose:

a.      <u>Party Email Custodians.</u>  Plaintiff shall disclose five (5) email custodians and the three Defendants shall collectively disclose eight (8) email custodians most likely to have discoverable email ESI in their possession, custody, or control.  If the other side has provided a list of subject matters that it desires to be covered by such email custodian's emails, the responding side shall make a reasonable effort to identify custodians that cover such topics.  The custodians shall be identified by name and connection to the litigation, and the type of information under the custodian's control.

b.      <u>Non-custodial Data Sources.</u>  A list of non-custodial data sources (e.g., shared drives, servers), if any, likely to contain discoverable ESI.

c.      <u>Third-Party Data Sources.</u>  A list of third-party data sources, if any, likely to contain such party's discoverable ESI (e.g., third-party email providers, and/or mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

d.      <u>Inaccessible Data.</u>  A list of data sources, if any, likely to contain such party's discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ.  P. 26(b)(2)(B).

e.      <u>Foreign data privacy laws.</u>  Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, e.g., the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

2.      On or before November 9, 2026,  Defendants shall collectively disclose five (5) of the Plaintiff's email custodians for Plaintiff to run search queries on such custodians' emails, and

Plaintiff shall disclose eight (8) email of the Defendants' email custodians for the Defendants to run search queries on such custodians' emails. The email custodians identified by the requesting side need not be limited to the custodians identified by the producing side.  These email custodians need not be identified in a single designation; instead, each side may designate email custodians in successive designations.

3.    The parties agree to run searches over emails pursuant to the methodologies described herein.  Each side shall also have ten (10) days to object to the other side's email custodian designations.  If the parties are unable to resolve disputes with respect to the appropriate email custodians, they may seek court guidance under the procedures set forth in Local Civil Rule 37.

**C. ESI Discovery Procedures**

1.    <u>On-site inspection of electronic media.</u>  With the exception of source code, executable and non-executable software, accused devices or other media typically inspected in patent infringement cases, on-site inspection of ESI shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.    <u>ESI Searches and Methodologies Generally.</u>

a.    The parties do not agree to use search terms for forms of ESI other than emails and their families.  For clarity, the parties' review and production of such other ESI shall be in accord with the process and requirements set forth in the Federal Rules of Civil Procedure and applicable local rules without the utilization of the search term protocols set forth herein.

b.    The parties agree that ESI search terms pursuant to the ESI Protocol set forth herein will be the primary mechanism for locating and producing relevant and responsive email discovery  However, to the extent particular types or types of documents are reasonably located as attachments to email without undue burden, the parties agree not to rely on this ESI Protocol as a basis for withholding such documents.

c.    Nothing in this ESI order shall limit the production of source code,

ESI PROTOCOL
(2:26-cv-00653-JHC)                    3

executable and non-executable software or other ESI typically produced in patent infringement cases.

3.      Search Term Methodology for Email ESI.

a.      For each email custodian, the parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, date restrictions, custodians, and other appropriate computer- or technology-aided methodologies throughout the below-described process.

b.      Method for search term exchanges and searches:

i.      For each email custodian, within fourteen (14) days of the selection of such custodian pursuant to the above-described process,[1] the producing party shall propose five (5) search queries for such custodian, along with any file type and date restrictions, and any other methodology that it proposes to use to locate email ESI for that custodian to identify likely responsive and discoverable information. The producing party shall exercise reasonable due diligence when proposing such search queries, including the identification of and use of common idiosyncratic language and terms of art (e.g., acronyms, nicknames, codenames, standard report and metric names, project names, etc.).  The producing party shall also reasonably consider information, if any, provided by the other side relating to the subjects for which the other side would like these searches to focus on.  When providing its proposed search queries, the producing party agrees to provide unique hit counts[2] for its proposed search queries (excluding family members) and hit counts with family members included. The producing party will cooperate in considering revisions to its proposed search terms and queries, including running reasonable additional hit reports, prior to running the search queries, reviewing, and

[1]      For clarification, this fourteen (14) days starts to run when the other side designates the custodian pursuant to Section B(2) above if there is no objection to such custodian, or if there is an objection to such custodian pursuant to Section B(3), it begins to run when that objection is resolved by Court order or agreement between the parties.

[2]      Unique hit counts mean hit counts after de-duplicating.

ESI PROTOCOL
(2:26-cv-00653-JHC)                                           4

producing the emails and families that contain such search terms.

ii. For each email custodian, within thirty (30) days after the production of documents for that custodian in accordance with the agreed-upon search queries, the requesting side may request an additional five (5) search queries for each custodian. The parties are to cooperate regarding revisions to the additional search queries, including by providing unique hit counts (excluding family members) and hit counts with family members included.

iii. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided unless narrowed with conjunctive combinations or with a limiting connector such as within a certain number of words. The parties agree to use a good faith effort to supply reasonable search queries (e.g., avoiding disjunctively combining terms directed to distinct and unrelated subject matters).

iv. There is no limit on the length of a particular search query. However, if the collection of searches or queries for any particular email custodian returns more than 3,200 unique documents, excluding families,[3] such searches or queries are presumed to be overbroad for that particular email custodian.

v. Nothing in this ESI Agreement prevents a party from seeking discovery from additional search queries or email custodians based on a showing of good cause or agreement between the parties.

3. Format.

a. ESI and non-ESI shall be produced to the requesting party as text searchable files. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their

---

[3] For clarification, while the presumption of burden shall be based on unique hit counts of documents excluding families, the producing party shall produce the family members except to the extent such family member is withheld on privilege grounds with a slip sheet reflecting the that the family member has been withheld on such grounds.

ESI PROTOCOL
(2:26-cv-00653-JHC)                                                                 5

information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance, Opticon, and/or equivalent load files containing all requisite information, including relevant metadata.

b.      Spreadsheets will be produced in native format and other files that are not easily converted to image format or not easily readable in image format, such as powerpoint, database, and drawing files, may be produced in native format or can be requested to be produced in such format.

c.      Each document image file shall be named with a unique number (Bates Number).  When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

4.      De-duplication.  The parties agree to make reasonable efforts to de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

5.      Email Threading.  The parties agree to produce any emails using email threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. For clarification, for any email or attachment in an email thread that is not included in the last email in such chain, each such email or attachment and the associated family members shall be produced as well as all branches of the email thread containing unique content, unique recipients or unique attachments.  The producing party shall provide, as overlay metadata fields on the most-inclusive copy, the custodian, BCC recipients, date/time sent, and date/time received for each

suppressed lesser-inclusive copy.  Upon reasonable request, the producing party will produce a less inclusive copy.

6.    Metadata fields.  The parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value.  The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.  With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.    Deleted, slack, fragmented, or other data only accessible by destructive forensic recovery, provided, however, that deleted data recoverable from

active backup systems, version-controlled repositories, or ordinary-course email-recovery processes remain subject to preservation obligations

b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e.    Back-up data that are duplicative of data that are more accessible elsewhere.

f.    Server, system or network logs.

g.    Data remaining from systems that ceased to be in use prior to the filing of the Complaint that are unintelligible on the systems in use.

h.    Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

i.    Cell phone text messages and pin-to-pin messages from Blackberry or similar devices as well as instant messages, including e.g., Slack and Microsoft Teams.

k.    Voice messages and voicemail recordings, including VoIP messages, as well as call logs.

**E.    Privilege**

1.    The parties' recognize that document-by-document privilege logs may be unduly burdensome and will consider alternatives such as categorical logs, automated metadata logs, and other commonsense solutions.  The parties will meet and confer regarding the timing, scope and nature of privilege logs and provide a proposal for such logs on or before December 1, 2026.

2.    With respect to privileged or work-product information generated after the filing of

the complaint, parties are not required to include any such information in privilege logs.

3.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

4.      Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection. If a disclosing party notifies the receiving party that privileged information has been disclosed, the receiving party shall not, from that point onward, copy, distribute, or otherwise use in any manner the disclosed privileged information, unless the parties agree or the court orders otherwise; the receiving party shall instruct all persons to whom the receiving party has disseminated the disclosed privileged information that such information is subject to this Protocol and may not be copied, distributed, or otherwise used; and the receiving party and all persons notified shall, within three (3) business days: return, destroy, or delete all disclosed privileged information and all notes or other work product revealing its contents that are in the possession, custody, or control of the receiving party, its Counsel, or any other person to whom the party provided the disclosed privileged information; and provide a certification of counsel that all disclosed privileged information has been returned, destroyed, or deleted.

**F.      Source Code**

To the extent source code files are contained within emails, as attachments to emails, or embedded within other ESI produced in accordance with this order, a slip sheet shall be provided to note where source code files have not been produced. Source code will instead be produced pursuant to Section 13 of the Stipulated Protective Order.

**G.      Modifications of this Order.**

The parties are not precluded from seeking a modification of any terms of this ESI Protocol

pursuant to agreement of the parties or a showing of good cause.

DATED this 5th day of June, 2026.

| DAVIS WRIGHT TREMAINE LLP | MARTINEZ & FARMER LLP |
|---|---|

By: *s/ Benjamin J. Byer*

John Goldmark, WSBA #40980
Benjamin J. Byer, WSBA #38206
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel: 206.622.3150
johngoldmark@dwt.com
benbyer@dwt.com

LATHAM & WATKINS LLP

Matthew J. Moore (pro hac vice)
Ashley N. Finger (pro hac vice)
Qiushi (William) Yao (pro hac vice)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
matthew.moore@lw.com
ashley.finger@lw.com
william.yao@lw.com

Richard G. Frenkel (pro hac vice)
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
Tel: 650.328.4600
rick.frenkel@lw.com

Allison Harms (pro hac vice)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600
allison.harms@lw.com

Julianne Campbell (pro hac vice)
1271 Avenue of the Americas
New York, NY 10020
Tel: 212.906.1200
julianne.campbell@lw.com

*Attorneys for Defendants Amazon.com, Inc., Amazon Web Services, Inc., and Amazon.com Services LLC*

By: *s/Tyler L. Farmer*
By: *s/Ariel A. Martinez*

Tyler L. Farmer, WSBA #39912
Ariel A. Martinez, WSBA #54869
4020 East Madison St., Suite 300
Seattle, WA 98112
Tel:  (206) 208-2270
Email: tyler@mfseattle.com
Email: ariel@mfseattle.com

REICHMAN JORGENSEN LEHMAN FELDBERG LLP

Courtland L. Reichman (pro hac vice pending)
creichman@reichmanjorgensen.com
Shawna Ballard (pro hac vice pending)
sballard@reichmanjorgensenc.om
Jennifer P. Estremera (pro hac vice)
jestremera@reichmanjorgensen.com
100 MARINE PKWY STE 300
REDWOOD SHORES, CA 94065
Tel: 650-623-1401
Fax: 650-623-1449
Email: jestremera@reichmanjorgensen.com

Christine E. Lehman (pro hac vice)
clehman@reichmanjorgensen.com
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310

Michael Matulewicz-Crowley (pro hac vice)
mmatulewicz-crowley@reichmanjorgensen.com
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965

*Attorneys for Plaintiff*

# ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED: June 8, 2026.

_____
JOHN H. CHUN
United States District Judge

ESI PROTOCOL
(2:26-cv-00653-JHC)                              11