UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| XTONE INC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM INC ET AL.,<br><br>Defendants. | CASE NO. 2:26-cv-00653-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss. Dkt. # 98. The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. Being fully advised, for the reasons below, the Court: (1) GRANTS IN PART and DENIES IN PART the motion; and (2) GRANTS Plaintiff leave to amend with respect to any dismissed claims.

## II
## BACKGROUND

Plaintiff Xtone, Inc. sues Defendants Amazon.com, Inc., Amazon Web Services, Inc., and Amazon.com Services, LLC for patent infringement. Dkt. # 1 at 1. Plaintiff says that Defendants have infringed on six of its patents—the Asserted Patents—by: (1) making, using,

selling, offering for sale, and/or importing in this District and into the United States products and/or methods covered by one or more claims of the Asserted Patents; (2) knowingly and intentionally aiding, abetting, and inducing others to directly infringe at least one claim of each Asserted Patent; (3) contributing to the direct infringement of at least one claim of each Asserted Patent; and (4) failing to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement of the Asserted Patents by others. *Id.* at 14–77. And it says that the Accused Products include: Amazon Alexa and Amazon Alexa+, Amazon's cloud-based voice service, including the Alexa Voice Service, and any Amazon devices or third-party (Alexa Built-in) devices that use or incorporate Alexa or Alexa+, including any devices or products that incorporate and/or use any version or release of the Alexa Voice Services Device Software Development Kit. *Id.* at 12.

Defendants now move to dismiss the Complaint, arguing that Plaintiff has failed to plausibly allege that Amazon is liable for direct, induced, contributory, or willful infringement of any of the Asserted Patents. *See generally* Dkt. # 98. As pertinent here, the Asserted Patents consist of the following:

- The '119 Patent (U.S. Patent No. 8,234,119)

The '119 patent, entitled "Voice application network platform," was issued on July 31, 2012. *See* Dkt. # 1 at 11; *see also* Dkt. # 2-1 at 1. It consists of a distributed voice applications system that includes a voice applications rendering agent and at least one voice applications agent that is configured to provide voice applications to an individual user. Dkt. # 2-1 at 1. And Claim 1 states:

> A method of providing speech-enabled interfaces to a user, comprising:
> receiving, at a management system, a registration request from a first generic voice applications agent that is loaded on a local device, the local device including an audio interface or being coupled to an audio interface;

> validating that the first generic voice applications agent is authorized to register with the management system
> registering the first generic voice applications agent based on the result of the validating step; and
> providing customization information to the first generic voice applications agent after it has been registered, the customization information allowing the first generic voice applications agent to be customized for a particular user such that the first customized voice applications agent can perform voice applications for the user.

*Id.* at 58.

- The ’859 Patent (U.S. Patent No. 8,401,859)

The ’859 patent, entitled “Voice application network platform,” was issued on March 19, 2013. *See* Dkt. # 1 at 11; *see also* Dkt. # 2-2 at 1. It consists of a distributed voice applications system that includes a voice applications rendering agent and at least one voice applications agent that is configured to provide voice applications to an individual user. Dkt. # 2-2 at 1. And Claim 1 states:

> A method of providing voice applications, comprising:
> obtaining information about a first user;
> obtaining information about at least one of resources of a local device that is utilized by the first user and a data network connection that the first user’s local device makes to a data network;
> customizing a generic voice application based on the obtained information about the first user to produce a first customized voice application that is capable of enabling voice interactions with the first user, wherein the customizing step comprises determining which portions of the customized voice application will be stored on the first user’s local device, and which portions of the customized voice application will be stored on a remote server, the determination being based on at least one of the obtained information about the resources of the first user’s local device and the obtained information regarding the data connection that the first user’s local device makes to a data network; and
> rendering at least a portion of the customized voice application to a local device that is utilized by the first user.

*Id.* at 58.

- The ’420 Patent (U.S. Patent No. 11,641,420)

The ’420 patent, entitled “System and method for placing telephone calls using a distributed voice application execution system architecture,” was issued on May 2, 2023. *See* Dkt. # 1 at 12; *see also* Dkt. # 2-3 at 1. It consists of a system and method for causing a voice application to be performed on one or more user local devices using a distributed voice application execution system architecture. Dkt. # 2-3 at 1. And Claim 1 states:

> A distributed voice application execution system (DVAES)-enabled local device for providing voice services, comprising:
> a memory;
> at least one processor;
> an operating system;
> a network interface;
> an audio and signaling layer with at least one audio I/O device interface; and
> a voice applications agent (VAA) software client configured to run on the at least one processor, the VAA software client further configured to register with a voice services provider (VSP) to have at least one credential that enables the VAA software client to communicate with one or more servers of the VSP, wherein the VAA software client is further configured to perform voice application (VA) components and/or respond to requests and/or instructions derived from VA components, and wherein the VAA software client is also configured to manage its connectivity with the at least one audio I/O device interface;
> wherein the DVAES-enabled local device includes one or more configuration materials and/or settings configured to be controlled by the VSP; and
> wherein the VAA software client is configured to:
> send, to one or more servers of the VSP, one or more messages that include information regarding an event, setting, state and/or variable associated with the DVAES-enabled local device;
> receive from one or more servers of the VSP, VA components for one or more voice applications, where the VA components are based on events, settings, states and/or variables associated with components of the DVAES-enabled local device; and
> manage performance of VA components and/or responses to requests and/or instructions derived from VA components.

*Id.* at 23.

- The ’406 Patent (U.S. Patent No. 11,657,406)

The ’406 patent, entitled “System and method for placing telephone calls using a distributed voice application execution system architecture,” was issued on May 23, 2023. *See* Dkt. # 1 at 12; *see also* Dkt. # 2-4 at 1. It consists of a system and method for delivering a message to a user, making use of a voice applications agent that is located, at least in part, on the user’s local device, where the voice applications agent is configured to perform a voice application to deliver the message to the user. Dkt. # 2-4 at 1. And Claim 29 states:

> A non-transitory computer-readable medium bearing instructions which, when performed by one or more processors of a local device configured to provide voice services to a user, cause the local device to perform a method comprising:
>
> sending, to one or more servers of a voice services provider (VSP) one or more messages that include information regarding an event, setting, state and/or variable associated with at least one component of the local device, wherein the local device includes a memory, at least one processor, an operating system, a network interface, an audio and signaling layer with at least one audio I/O device interface, and a voice applications agent (VAA) software client configured to run on the at least one processor, the VAA software client being configured to register with the VSP to have at least one credential that enables the VAA software client to communicate with one or more servers of the VSP, wherein the VAA software client further is also configured to start and manage a plurality of runtime environments (RTEs), wherein each RTE can perform VA components and/or respond to requests and/or instructions derived from VA components, and wherein the VAA software client is further configured to manage connectivity between the at least one audio I/O device interface and one or more RTEs, and wherein the local device includes one or more configuration materials and/or settings configured to be controlled by the VSP;
>
> receiving from one or more servers of the VSP, VA components for one or more voice applications, the VA components being based on events, settings, states and/or variables associated with components of the local device; and
>
> managing, with the VAA software client, one or more RTEs as the RTEs perform VA components and/or respond to requests and/or instructions derived from VA components.

*Id.* at 22.

- The ’127 Patent (U.S. Patent No. 11,785,127)

The ’127 patent, entitled “Voice application network platform,” was issued on October 10, 2023. *See* Dkt. # 1 at 12; *see also* Dkt. # 2-5 at 1. It consists of a distributed voice

applications system that includes a voice services instruction rendering agent and at least one voice services software client that is configured to provide voice applications to an individual user. Dkt. # 2-5 at 1. And Claim 1 states:

> A local device for providing voice services, comprising:
> a memory;
> at least one processor;
> an operating system;
> a network interface;
> an audio and signaling layer with at least one audio I/O device interface; and
> a voice services software client configured to run on the at least one processor and to communicate with one or more servers of a voice services provider (VSP), wherein the voice services software client also is configured to start and manage one or more processes and/or threads, wherein each process and/or thread is configured to perform or respond to voice service instruction that is either received from a server of the VSP or that is based on information received from a server of the VSP, wherein each voice service instruction relates to one or more voice services, and wherein the voice services software client is configured to manage connectivity between the at least one audio I/O device interface and one or more processes and/or threads;
> wherein the local device includes one or more configuration materials and/or settings configured to be controlled by the VSP;
> wherein the voice services software client is configured to:
> send, to one or more servers of the VSP, one or more messages that include information regarding an event, setting, state and/or variable associated with at least one component of the local device;
> receive, from one or more servers of the VSP, voice service instructions relating to one or more voice services, where the voice service instructions are based on events, settings, states and/or variables associated with components of the local device; and
> manage one or more processes and/or threads as the processes and/or threads perform or respond to voice service instructions relating to one or more voice services.

*Id.* at 59–60.

- The ’750 Patent (U.S. Patent No. 12,126,750)

The ’750 patent, entitled “Voice application network platform,” was issued on October 22, 2024. *See* Dkt. # 1 at 12; *see also* Dkt. # 2-6 at 1. It consists of a distributed voice applications system that includes a voice application rendering agent and at least one voice

applications agent that is configured to provide voice applications to an individual user. Dkt. # 2-6 at 1. And Claim 1 states:

> A non-transitory computer-readable medium bearing instructions which, when performed by one or more processors of a local device, cause the local device to perform a method of providing voice services, the method comprising:
>
> sending, to one or more servers of a voice services provider (VSP), one or more messages that include information regarding an event, setting, state and/or variable associated with at least one component of the local device, wherein the local device includes a memory, one or more processors, an operating system, a network interface, an audio and signaling layer with at least one audio I/O device interface, and a voice services software client configured to run on the one or more processors and to communicate with one or more servers of the VSP, wherein the voice services software client also is configured to start and manage one or more processes and/or threads, wherein at least some of the processes and/or threads are configured to perform or respond to information received from a server of the VSP that relates to one or more voice services, and wherein the voice services software client is configured to manage connectivity between the at least one audio I/O device interface and at least some of processes and/or threads;
>
> receiving, from one or more servers of the VSP information relating to one or more voice services, where the information is based on events, settings, states and/or variables associated with components of the local device; and
>
> managing one or more processes and/or threads as the one or more processes and/or threads perform or respond to the received information relating to one or more voice services.

*Id.* at 59–60.

## III
## DISCUSSION

### A. Procedural Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral*, Inc., 710 F.3d 946, 956 (9th Cir. 2013). And if a complaint lacks a "cognizable legal theory" or "sufficient facts alleged to support a cognizable legal theory[,]" the court should dismiss it for failure to state a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In the context of patent infringement cases, these standards do not require a plaintiff to "prove [their] case at the pleading stage" or "plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citations omitted). But they do require more than "merely alleg[ing] entitlement to relief[,]" supplying "labels and conclusions," or providing "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* at 1352–53 (citations omitted). The level of detail required to adequately plead infringement will vary depending on the specific factual circumstances of the case and the nature of the asserted patent. *See id.* at 1353. But there must be enough facts "that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* In other words, enough facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Id.* (internal quotation marks and citations omitted). Otherwise, the court should dismiss the claim and grant the plaintiff leave to amend. *See id.*; *see also CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wash. 2018); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, 721 F. Supp. 3d 1050, 1053, 1055 (N.D. Cal. 2024).

B. Analysis

Defendants say that the Court should dismiss Plaintiff's claims because the Complaint "fails to allege sufficient facts to support a reasonable inference that Amazon is liable for direct, induced, contributory, or willful infringement of any of the six asserted patents." Dkt. # 98 at 10. For the reasons below, the Court DENIES the motion as to Plaintiff's direct infringement claims, but GRANTS the motion as to Plaintiff's induced, contributory, and willful infringement claims.

1. Direct Infringement Claims

"To state a claim for direct patent infringement, a plaintiff must allege that a defendant, without authority, makes, uses, offers to sell, or sells any patented invention." *O'Brien v. Microsoft Corp.*, 2020 WL 4734325, at *2 (W.D. Wash. Aug. 14, 2020) (cleaned up and citations omitted). To properly plead such a claim, "a plaintiff must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim." *Scripps Rsch. Inst. v. Illumina, Inc.*, 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016) (collecting cases).[1] Defendants say that Plaintiff has not met this threshold. *See* Dkt. # 98 at 10–16. The Court disagrees.

First, Defendants say that Plaintiff fails to allege a coherent theory of infringement for each patent because Plaintiff improperly "conflates aspects of separate products and services and blends them together in an attempt to meet each asserted claim[.]" *Id.* at 10. Defendant says that Plaintiff relies on different products and services to satisfy the claim limitations for each Asserted Patent, thereby improperly "mixing and matching between different accused products"

[1] The Court notes that two cases cited by Defendants in the "Direct Infringement" Legal Standards portion of their motion, while generally related to direct infringement, do not set forth the proper legal standard for a motion to dismiss. *See Geovector Corp. v. Samsung Elecs. Co.*, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) (determining whether the plaintiff's claims satisfy the Northern District of California's Patent Local Rule 3-1(b)); *V-Formation Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005) (evaluating whether the district court correctly found noninfringement as a matter of law on a motion for summary judgment).

and violating the foundational requirement that every claim limitation must appear in an accused product. *Id.* at 11–14 (internal quotation marks and citations omitted).

But as the Complaint makes clear, the core challenged product is Alexa (and Alexa+).[2] According to the Complaint, Alexa and Alexa+, as well as the Amazon products and services that use and incorporate them, directly infringe on the Asserted Patents because they rely on Plaintiff's patented Distributed Voice Application Execution System Architecture (DVAESA)—a complex distributed systems architecture that makes it possible for users to interact with local devices by voice. *See* Dkt. # 1 at 10, 12–14; *see also* Dkt. # 101 at 8. It further alleges that the Accused Products all "function in substantially the same manner" and use the same components of the Alexa system, thereby infringing on the Asserted Patents in the same way. Dkt. # 1 at 16 n.18; *see also* Dkt. # 101 at 9–10. Thus, to successfully allege infringement, Plaintiff must articulate why it is plausible that the Alexa system, i.e., Alexa, Alexa+, and any service or device that interacts with Alexa or Alexa+, directly infringes on at least one claim of each Asserted Patent; not why it is plausible that each and every product listed in the Complaint specifically meets each claim limitation.[3] Plaintiff has met this burden.

[2] *See, e.g.*, Dkt. # 1 at 2 (alleging that "Xtone's patented technology is at the heart of Amazon Alexa"); *id.* (explaining the importance of Alexa to Amazon); *id.* at 12 (listing the Accused Products as "Amazon Alexa or Amazon Alexa+, Amazon's cloud based voice service including the Alexa Voice Service, and any Amazon devices or third-party (Alexa Built-in) devices that use or incorporate Amazon Alexa or Amazon Alexa+"); *id.* at 14 (alleging that Amazon's infringement is "willful and deliberate" because "Amazon knew of the value of Xtone's technology, knew of Xtone's patents, and designed Alexa to incorporate Xtone's patented technology"); *see also* Dkt. # 101 at 13–14 ("Ultimately, Alexa is the accused product—whether it is interacting with 'Alexa Built-in Devices' or Amazon products like Echo show; providing 'access tokens' and other tokens to 'Companion Apps'; or enabling 'Alexa Skills.'").

[3] *See, e.g.*, *Bot M8*, 4 F.4th at 1352 ("A plaintiff is not required to plead infringement on an element-by-element basis."); *Westech Aerosol Corp. v. 3M Co.*, 2017 WL 3387363, at *3 (W.D. Wash. Aug. 7, 2017) (denying the defendants' Rule 12(b)(6) motion because the "complaint sufficiently puts the defendants on notice of how, where, and to what degree [the plaintiff] claims their products infringe its patent" and "presents a cognizable legal theory supported by factual allegations that raise [the plaintiff's] right to relief . . . above the speculative level"); *Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.*, 2017 WL 5634131, at *7–8 (W.D. Wash. Nov. 21, 2017) (denying the defendant's Rule 12(b)(6) motion after rejecting the defendant's argument that the plaintiff's infringement claims are too conclusory and noting

As for the ’119 patent, Plaintiff alleges that Alexa directly infringes at least Claim 1. Dkt. # 1 at 15. Supported by facts and examples, the Complaint says that the Alexa service, primarily through its AVS (Alexa Voice Services) and SDK (Device Software Development Kit) components, is a method of providing “speech-enabled interfaces to a user.” *See id.* at 16–17. It further alleges that the Accused Products: (1) allow users to talk directly with Alexa; (2) receive, at a management system, a registration request from a first generic voice applications agent that is loaded on a local device, where the local device includes an audio interface or is coupled to an audio interface; (3) validate that the first generic voice applications agent is authorized to register with the management system registering the first generic voice applications agent based on the results of a validating step, i.e., the LWA (Login with Amazon) authorization service; and (4) provide customization information to the first generic voice applications agent after it has been registered via a LWA access token, thereby allowing the first generic voice applications agent to be customized for a particular user. *See id.* at 16–21; *see also* Dkt. # 101 at 10, 12–14. Such

---

that the plaintiff “has attached the patents-in-suit, described its protected technology, identified the accused products, and described how those products allegedly perform the same functions or methods that are protected by the [patent-in-suit]”); *Novitaz, Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *4 (N.D. Cal. May 26, 2017) (granting the defendant’s Rule 12(b)(6) motion because the complaint “makes no factual allegations about how the [accused products] operate, let alone map this information onto any elements of any of the claims of the [patent-in-suit]”); *O’Brien*, 2020 WL 4734325, at *3 (granting the defendant’s Rule 12(b)(6) motion because the “complaint does not allege that [the defendant] has infringed each limitation of at least one [ ] patent claim”); *Huang v. Amazon.com, Inc.*, 2025 WL 314718, at *3 (Fed. Cir. Jan. 28, 2025) (affirming the district court’s dismissal because the complaint simply assumes, with no factual support, that either all or a majority of the accused products contain the infringing technology); *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 500 (W.D. Tex. 2023) (granting the defendant’s Rule 12(b)(6) motion because the plaintiff’s claim charts allege that one accused product practices certain elements of a claim and that a different accused product practices other elements of that same claim); *TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (granting the defendant’s Rule 12(b)(6) motion because the plaintiff does not plausibly allege that any accused product, or any combination of accused products, performs all the elements of a claim); *Lemko Corp. v. Microsoft Corp.*, 2024 WL 3798217, at *5–6 (N.D. Tex. July 29, 2024), *report and recommendation adopted sub nom. Lemko Corp. v. Microsoft Corp. & Affirmed Networks, Inc.*, 2024 WL 3806350 (N.D. Tex. Aug. 13, 2024) (granting the defendants’ Rule 12(b)(6) motion in part because the complaint mixes and matches between accused products and thus fails to “adequately allege that any specific Accused Product includes the elements of the relevant patent claims”).

allegations thus suffice to coherently plead direct infringement of Claim 1 of the ’119 patent. *See* Dkt. # 2-1 at 58 (Claim 1 limitations).

Plaintiff has similarly pleaded a coherent theory of direct infringement for the ’859 patent. The Complaint pleads specific facts, supported by product-based examples, that the Alexa service performs each element of Claim 1 of the ’859 patent. *See* Dkt. ## 1 at 23–28; 101 at 10, 14–15; *see also* Dkt. # 2-2 at 58 (Claim 1 limitations). And it even pleads each element of Claim 1 with respect to a single product—the Amazon Alexa Auto SDK—despite Defendants’ contention that Plaintiff has failed to do so. *Compare* Dkt. # 1 at 24–28 (citing the Alexa Auto SDK as an example for every element of Claim 1), *and* Dkt. # 101 at 14–15 (Plaintiff explaining that the Complaint “provides allegations and cites evidence for Alexa Auto SDK for each and every element,” with other products and evidence cited as “*second* example[s] of infringement”), *with* Dkt. # 98 at 13 (“[N]one of [Plaintiff’s allegations regarding the ’859 patent] are part of a single product or service.”). There is thus no reason to dismiss this infringement claim for improperly mixing and matching.

As for the other four patents, the Complaint alleges that Defendants have directly infringed because each Alexa-enabled device interacts with and incorporates components of Plaintiff’s distributed architecture in violation of the ’420, ’406, ’127, and ’750 patents. *See generally* Dkt. # 1; *see also* Dkt. # 101 at 10–11, 15–17. For each patent, the Complaint states that all Alexa-enabled devices meet the elements of at least one of the patent claims and infringe in substantially the same manner. *See* Dkt. # 1 at 29–42, 44–54, 56–66, 68–76. It then identifies the Amazon Echo Show 15 as an example of how each Accused Product satisfies the challenged claim limitations. *See id.* And while Defendants have no doubt raised many arguments that could lead a factfinder to find no infringement, *see generally* Dkt. ## 98 & 105, such arguments

ultimately speak to the merits of Plaintiff's claims, not to whether Plaintiff has plausibly pleaded a coherent theory of direct infringement to survive a Rule 12(b)(6) motion.

Second, Defendants say that Plaintiff's direct infringement claims fail because Plaintiff "improperly relie[s] on allegations of third-party modification to allege direct infringement of all six asserted patents and all six counts"—namely, allegations based on "Built-in" devices, third-party Alexa Skills, and third-party Raspberry Pi testing. Dkt. # 98 at 14–15. But as stated by Plaintiff, the Complaint "does not allege any post-sale modifications": it alleges that the Accused Products infringe on the patents "without modification." Dkt. # 101 at 18; *see also* Dkt. # 1 at 14–77. And even if it did, such allegations would not necessarily preclude Plaintiff's direct infringement claims, as Plaintiff's argument is that these products infringe by incorporating and interacting with the distributed Alexa system and its components in the same way that Amazon's own devices do, i.e., in the manner developed by the accused infringer, not because of some uncontemplated act by a third party. Defendants' third-party modification arguments and cited cases thus do not warrant dismissal.[4]

Third, Defendants say that the Court should dismiss certain infringement claims because the Complaint does not tie every Accused Product "to any claim limitation—much less an entire claim." Dkt. # 98 at 15. And so, it says, Plaintiff's direct infringement claims based on these products—the Echo (1st-4th Generations), Echo Dot (1st-5th Generations), Echo Show (1st-2nd,

[4] *See, e.g.*, Dkt. # 98 at 14–15 (arguing that dismissal is warranted because Plaintiff's allegations, at best, establish that hypothetical customization or modification of the Accused Products by a third-party could satisfy the claim limitations); *Golden v. Samsung Elecs. Am., Inc.*, 2024 WL 539973, at *3 (Fed. Cir. Feb. 12, 2024) (affirming the district court's dismissal because "[the plaintiff's] allegations, even if true, at best establish that [the accused infringer's products] might be modified post-sale" by "plugins and app-specific software, not developed by [the accused infringer]" to perform the accused functionality); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555–56 (Fed. Cir. 1995) (concluding that the district court erred in finding a likelihood of infringement because "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim").

5th, 8th, 10th, and 21st Generations), Echo Spot, Echo Plus (1st-2nd Generations), Echo Studio, Echo Pop, Amazon Tap, Echo Look, and Echo Flex—must be dismissed. *See id.*

This argument, however, mischaracterizes the applicable law: a complaint for patent infringement may survive a motion to dismiss by providing specific allegations for one accused product as an illustrative example for each patent-in-suit rather than specifically alleging infringement for every single accused product.[5] It also mischaracterizes Plaintiff's allegations, which are that all the accused devices infringe because Alexa infringes on the Asserted Patents, the devices are Alexa-enabled, and Alexa functions and interacts with every Alexa-enabled device in the same way, using the same components. *See* Dkt. # 101 at 19–20. The Court thus concludes that there are enough factual allegations in the Complaint that, when taken as true, articulate why it is plausible that the Accused Products all infringe on the Asserted Patents. So it declines to dismiss Plaintiff's direct infringement claims on this basis.

Fourth, Defendants say that the Court should dismiss Counts II–V because Plaintiff has alleged "facts that are 'inconsistent with and contradict infringement.'" Dkt. # 98 at 15 (quoting *Bot M8*, 4 F.4th at 1354). Defendants then identify the following two "inconsistencies": (1) the Alexa Auto functionality does not meet the "determining which portions of the customized voice application will be stored on the first user's local device, and which . . . will be stored on a

[5] *See, e.g.*, *Document Sec. Sys., Inc. v. Everlight Elecs. Co.*, 2017 WL 10545081, at *2–3 (C.D. Cal. Nov. 16, 2017) (acknowledging that the plaintiff "provides specific allegations for one accused instrumentality as an illustrative example for each patent-in-suit" and rejecting the defendants' request to dismiss due to the plaintiff's failure "to allege that the illustrative examples . . . are representative of the infringement claims for the vast majority of product lines identified in [the complaint]"); *Philips v. ASUSTeK Comput. Inc*, 2016 WL 6246763, at *3–4 (D. Del. Oct. 25, 2016) (acknowledging that the plaintiff "provides specific details of at least one of the method and device claims allegedly infringed under each patent-in-suit" and rejecting the defendant's request to dismiss based on the complaint's "use of exemplary—rather than exhaustive—lists of products and claims"); *Westech*, 2017 WL 3387363, at *2–3 (denying the defendants' Rule 12(b)(6) motion, despite the complaint simply listing 38 products that allegedly infringe on one claim of the patent without any specific illustrative examples, because the "complaint sufficiently puts the defendants on notice of how, where, and to what degree" their products allegedly infringe).

remote server" limitation of the'859 patent because the Complaint "cites to an Alexa Auto functionality that can either be processed by the cloud 'when the network connection is available' or consist of 'a full-suite of offline functionality' to permit Alexa capabilities 'even when connectivity is intermittent or not available'"; and (2) "the asserted claims of the '420, '406, and '127 patents (Counts III–V) recite that the claimed local device includes settings configured to be controlled by the voice services provider" but the Complaint "relies on 'an Alexa App installed on a user device (such as a smart phone)' to allege that certain settings are 'controlled[,]'" which is not the alleged voice services provider. *Id.* at 15–16.

But the sentence Defendants cite for the first proposition—Alexa Auto "offers a full-suite of offline functionality, in addition to online functionality, for accessing Alexa in the car," *see* Dkt. # 5-6 at 1—would appear to suggest that Alexa stores some information offline and other information online. This, in turn, supports a plausible inference that Alexa determines where certain portions of the customized voice application will be stored, as required by the claim limitation. And the second proposition appears to ignore the Complaint's actual allegations. Specifically, the allegation that Alexa-enabled devices include "configuration materials and/or settings configured to be controlled by the [voice services provider,]" as certain "settings/configuration (such as changing the timezone [and] adjusting brightness)" are controlled "via directives from AVS," which *is* the alleged voice services provider. Dkt. # 1 at 39. Thus, Plaintiff's facts, if accepted as true and construed in the light most favorable to Plaintiff, are not inconsistent with infringement.

Accordingly, the Court concludes that the Complaint pleads enough facts to give Defendants fair notice of Plaintiff's direct infringement claims. And so it denies Defendants' request to dismiss these claims as to all six Asserted Patents.

2. Pre-Suit Induced, Contributory, & Willful Infringement Claims

To state a claim for induced, contributory, or willful infringement, a plaintiff must allege, among other things, that the accused infringer had knowledge of the patent-in-suit and knowledge that their acts constituted infringement. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–57 (Fed. Cir. 2018); *SRI Int'l, Inc. v. Cisco Sys, Inc.*, 14 F.4th 1323, 1329–30 (Fed. Cir. 2020). Knowledge can be satisfied by plausibly alleging "either actual knowledge or willful blindness," with willful blindness "requir[ing] the patentee to show not only that the accused subjectively believed that there was a high risk of infringement, but also that the accused took deliberate actions to avoid confirming infringement." *P2i Ltd. v. Favored Tech USA Corp*., 2024 WL 4294652, at *6 (N.D. Cal. Sept. 24, 2024); *Robocast, Inc. v. Netflix, Inc.*, 640 F. Supp. 3d 365, 371 (D. Del. 2022) (quoting *Unwired Planet, LLC v. Apple Inc*., 829 F.3d 1353, 1364 (Fed. Cir. 2016)). Defendants contend that Plaintiff's claims for induced, contributory, and willful infringement should be dismissed because the Complaint does not adequately plead pre-suit knowledge of the Asserted Patents, among other things. *See* Dkt. # 98 at 16–17. The Court agrees.

According to the Complaint, Defendants had knowledge of the patents because: (1) a former Amazon employee—Manoj Sindhwani—"worked as Xtone's Vice President of Engineering from April 2008 until June 2010" and during that time, "learned of the substance and importance of Xtone's U.S. Patent Application No. 11/514,116"; (2) Mr. Sindhwani began working "at Amazon as a high ranking engineer and senior executive on the Alexa team" in July 2014, where he "helped develop the accused products and technologies at Amazon" and helped Amazon to "design and develop Alexa to function and operate incorporating Xtone's patented technology"; (3) Defendants were "aware of Xtone and its patented technology at least through Mr. Sindhwani"; and (4) Defendants were "aware of Xtone and its patented technology at least

through its citations to Xtone patents during prosecution of its own patents." Dkt. # 1 at 13–14. But such allegations, even if taken as true and construed in the light most favorable to Plaintiff, are not enough to plausibly allege pre-suit knowledge of the Asserted Patents.

As for the allegations concerning Mr. Sindhwani, the Complaint alleges that Mr. Sindhwani "learned of the substance and importance of Xtone's U.S. Patent Application No. 11/514,116"—the parent application for the Asserted Patents—while working at Xtone. *See id.* at 13. But U.S. Patent Application No. 11/514,116[6] was apparently abandoned in 2011 and is also not a patent-in-suit. *See* Dkt. ## 99-9 at 2–3 (Notice of Abandonment for U.S. Patent Application No. 11/514,116); 1 at 11 (listing the "Xtone patents-in-suit"). And the Complaint contains no allegations that Mr. Sindhwani knew about the applications for the Asserted Patents, *see generally* Dkt. # 1, nor were such applications filed while Mr. Sindhwani worked for Xtone, let alone approved.[7] Additionally, courts regularly dismiss claims of indirect and willful infringement where, as here, the allegations of knowledge are based solely on the notion that the accused infringer knew about a pending patent application[8] or knew about the plaintiff's general patent portfolio.[9] And the Complaint pleads no facts that would permit the Court to find

[6] According to the parties, U.S. Patent Application No. 11/514,116 and U.S. Patent Publication No. 2007/0047719 refer to the same patent application. *See* Dkt. ## 101 at 23; 98 at 18.

[7] *See, e.g.*, Dkt. ## 2-1 at 1 ("Filed: Jan. 23, 2012"); 2-2 at 1 ("Filed: Nov. 10, 2010"); 2-3 at 1 ("Filed: Jan. 24, 2022"); 2-4 at 1 ("Filed: Jan. 24, 2022"); 2-5 at 1 ("Filed: Apr. 26, 2023"); 2-6 at 1 ("Filed: Jan. 15, 2024").

[8] *See, e.g.*, *Kremerman v. Open Source Steel, LLC*, 2017 WL 3970894, at *3 (W.D. Wash. Sept. 8, 2017) (dismissing claim of induced infringement in part because liability for such a claim requires the patent to actually exist); *McRee v. Goldman*, 2012 WL 3745190, at *3 (N.D. Cal. Aug. 28, 2012) (dismissing claim of induced infringement because the complaint pleads knowledge of the pending patent application, not knowledge of the patent-in-suit); *P2i*, 2024 WL 4294652, at *8 (dismissing claim of induced infringement in part because alleging knowledge based on a inter partes review of related patents is not enough to plausibly allege knowledge of the patent-in-suit); *iFIT Inc. v. Peloton Interactive, Inc.*, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) (dismissing claim of willful infringement because "[k]nowledge of a patent application alone . . . is not enough to establish knowledge of the patent(s) that issued from that application").

[9] *See, e.g.*, *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 728 (W.D. Tex. 2022) ("Multiple district courts, post-*Halo*, have held that general knowledge of a patent portfolio without

knowledge based on a willful blindness theory. *See generally* Dkt. # 1. Plaintiff's allegations as to Mr. Sindhwani thus fail to plausibly allege pre-suit knowledge.

The allegations concerning Defendants' citations to Xtone patents during their own patent prosecutions likewise fail to establish knowledge. To begin, the Complaint provides only one citation to support this contention: "U.S. Patent No. 8,447,700 (citing to the '119 patent)." *See* Dkt. # 1 at 14. As clarified by Plaintiff's Response, however, the reference to the '119 patent is incorrect: it should be U.S. Patent Publication No. 2007/0044719, which Plaintiff contends is the same patent application that Mr. Sindhwani allegedly knew about. *See* Dkt. # 101 at 23. But as noted above, Plaintiff cannot plausibly plead knowledge of all six Asserted Patents simply by alleging that Defendants had knowledge of a related, but abandoned, patent application that is not at issue in this action. The Court also notes that U.S. Patent No. 8,447,700 is assigned to "Amazon Technologies, Inc." *See* Dkt. # 99-10 at 2. The Court thus questions whether a valid knowledge allegation as to non-party Amazon Technologies, Inc. would even suffice to allege knowledge as to the actual defendants in this suit.[10] And while the Court acknowledges Plaintiff's concerns regarding the difficulty of alleging knowledge without the benefit of discovery, *see* Dkt. # 101 at 22, a conclusory statement about knowledge, absent any

---

more is insufficient even to plausibly allege knowledge of a particular asserted patent.") (citation omitted); *Dental Monitoring SAS v. Align Tech., Inc.*, 2023 WL 4297570, at *6 (N.D. Cal. June 30, 2023) ("[K]nowledge of the existence of a patent *portfolio* does not confer knowledge of individual patents or claims in that portfolio, let alone knowledge of their infringement.") (emphasis in original); *Quickie Tie-Down Enters., LLC v. USA Prods. Grp., Inc.*, 2025 WL 83305, at *4 (E.D. Cal. Jan. 13, 2025) ("Allegations that defendants were generally aware of [the] plaintiff's patent portfolio are [ ] insufficient to support a claim of specific knowledge of [the patent-in-suit.]"); *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022) ("Mere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough.").

[10] *See, e.g.*, *P2i*, 2024 WL 4294652, at *7 (collecting cases and noting that a plausible allegation of pre-suit knowledge as to a parent company is insufficient, without more, to allege that the subsidiary company had pre-suit knowledge).

specific facts linking Defendants to the Asserted Patents, still does not suffice to survive a motion to dismiss.[11]

Likewise, the Court does not find that Defendants' "arguments as to knowledge ignore the Federal Circuit's standard, which requires the court to examine the 'totality of the circumstances presented in the case.'" Dkt. # 101 at 24 (quoting *WCM Indus., Inc. v. IPS Corp.*, 721 Fed. App'x 959, 970 (Fed. Cir. 2018)). Although Plaintiff is correct that there is no per se rule and that a court must look to the totality of the circumstances, *see WCM Indus.*, 721 Fed. App'x at 970, Plaintiff must still provide sufficient facts that, when viewed together, plausibly allege that Defendants had pre-suit knowledge of the Asserted Patents.[12] And Plaintiff's allegations that Defendants were aware of Xtone as a company, and may have been aware of a different, abandoned patent application filed by Xtone, is just not enough to plausibly allege pre-suit knowledge of all six Asserted Patents, even under a totality of the circumstances analysis.

---

[11] *See, e.g.*, *Bascom Rsch. LLC v. Facebook, Inc.*, 2013 WL 968210, at *4 (N.D. Cal. Mar. 12, 2013) (finding the plaintiff's allegation that the defendants "knowingly induced" infringement deficient, as the complaint does not contain facts indicating "whether, when[,] or how [the] defendants became aware of the patents-in-suit"); *DR Sys., Inc. v. Avreo, Inc.*, 2012 WL 1068995, at *2 (S.D. Cal. Mar. 29, 2012) (finding the plaintiff's allegation that the defendant had "actual knowledge" and "knowingly and intentionally induced infringement" to be conclusory and insufficient to allege knowledge).

[12] *Compare* Footnotes 8–11, *with Elm 3DS Innovations, LLC v. Samsung Elecs. Co., Ltd.*, 2015 WL 5725768, at *2–3 (D. Del. Sept. 29, 2015) (finding knowledge based on allegations that: (1) the patent inventor made a presentation to the defendants about the patented technology; (2) the defendants cited the parent patent and three children of the patent that share the same specification as the patent-in-suit in prosecuting several of its own patents; and (3) the patent was well known within the industry and frequently cited by the defendants' competitors), *and WCM Indus.*, 721 Fed. App'x at 970 (finding knowledge because the plaintiff "provided sufficient evidence for a reasonable jury to conclude that [the defendant] *did* know of [the plaintiff's] patents as they issued, if not earlier") (emphasis in original), *and Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (finding knowledge because the complaint pleads that the plaintiff's former employees had actual knowledge of the patent-in-suit when they left to work for the defendant), *and Firstface Co. v. Apple, Inc.*, 2019 WL 1102374, at *1 (N.D. Cal. Mar. 8, 2019) (finding knowledge based on a 2015 offer to the defendant to purchase or license the plaintiff's patent portfolio), *and Softview LLC v. Apple Inc.*, 2012 WL 3061027, at *5–6 (D. Del. July 26, 2012) (finding knowledge because the plaintiff's three allegations, while inadequate on their own, combine to permit the reasonable inference that the defendant had pre-suit knowledge).

Accordingly, the Court concludes that Plaintiff has failed to allege pre-suit knowledge of the Asserted Patents. It thus dismisses Plaintiff's pre-suit induced, contributory, and willful infringement claims for failure to state a claim.[13]

3. Post-Suit Induced, Contributory, & Willful Infringement Claims

Defendants' Motion to Dismiss does not address whether Plaintiff has alleged post-suit knowledge to support its induced, contributory, and willful infringement claims. *See generally* Dkt. # 98 at 16–22. The Court thus agrees with Plaintiff that such claims should not be dismissed for failing to plead knowledge. *See* Dkt. # 101 at 21–22. The Court does not, however, believe that Defendants' failure to address post-suit knowledge means that their motion should automatically be denied as to Plaintiff's post-suit induced, contributory, and willful infringement claims, as Defendants' motion raises other arguments that involve the other elements of these claims. *See* Dkt. # 98 at 19–22. The Court thus proceeds to evaluate whether the Complaint adequately pleads the remaining elements of Plaintiff's post-suit induced, contributory, and willful infringement claims.

For induced infringement, in addition to knowledge, "a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime*, 869 F.3d at 1379 (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). And while a plaintiff need not prove their case at the pleading stage, they must allege facts from which it may be reasonably inferred that the defendant specifically intended to induce others to infringe. *See, e.g.*, *Kremerman*, 2017 WL 3970894, at *3; *IP*

---

[13] Because the Court does not find pre-suit knowledge, it need not address whether Plaintiff has adequately pleaded the other elements of these claims. Should Plaintiff wish to amend the complaint, however, Plaintiff is advised to consider the other strong arguments raised by Defendants' Motion and Reply with respect to the pre-suit induced, contributory, and willful infringement claims.

*Commc'n Sols., LLC v. Viber Media (USA) Inc.*, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017). For example, facts about "who was induced to infringe, how they infringed, and how defendants had knowledge that the induced acts occurred and that they constituted patent infringement." *Kremerman*, 2017 WL 3970894, at *3. Courts have also noted that "pleading knowledge of the patents alone is not enough to plead the 'specific intent to encourage, recommend, or promote infringement' necessary to establish inducement." *P2i*, 2024 WL 4294652, at *8 (quoting *Bayer Healthcare LLC v. Baxalta Inc*., 989 F.3d 964, 988 (Fed. Cir. 2021)); *see also CyWee*, 312 F. Supp. 3d at 978 ("Specific intent can be shown through circumstantial evidence, but the mere knowledge of possible infringement will not suffice.") (internal quotation marks and citation omitted).

Here, the Complaint is devoid of these facts. Although the Complaint says that Defendants induced infringement "by, for example, selling and offering access to its products and services, and by providing developer materials and other online resources that provide instructions for its products and services[,]" Dkt. # 1 at 22, 28, 43, 54, 67, 77, it provides no information as to who was specifically encouraged to infringe, how they infringed, or why Defendants would have been aware that such acts constituted infringement. *See id.* Additionally, while a plaintiff can sometimes cite to information on a website to satisfy the specific intent requirement, *see, e.g.*, *Schuyleman v. Barnhart Crane & Rigging Co.*, 2023 WL 8528501, at *6 (W.D. Wash. Dec. 8, 2023), a plaintiff must still identify which materials on that website actually constitute infringement before a court can find specific intent adequately alleged.[14] As Plaintiff has not done so here, the Court does not find that Plaintiff has adequately

[14] *See, e.g.*, *id.* (finding specific intent requirement satisfied because the plaintiff alleged "that [the defendant's] website 'provides information and videos regarding the operation and usage of the Accused Products' and by providing direct links to those videos[,]" where the videos themselves support an inference of infringement); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, 2018 WL 6629709,

alleged specific intent to induce infringement of any Asserted Patent It thus dismisses Plaintiff's post-suit induced infringement claims.

As for contributory infringement, the complaint must plead that "the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 47 (Fed. Cir. 2024) (citation omitted). This, in turn, requires a plaintiff to provide "factual underpinnings for its allegations that there are no substantial noninfringing uses of the accused devices." *Uniloc USA, Inc. v. Logitech, Inc.*, 2018 WL 6025597, at *3 (N.D. Cal. Nov. 17, 2018); *see also Fluidigm Corp. v. IONpath, Inc.*, 2020 WL 408988, at *4 (N.D. Cal. Jan. 24, 2020); *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, 2015 WL 3513151, at *5 (W.D. Tex. Mar. 24, 2015).

Plaintiff has not met this burden. Although the Complaint generally alleges that Xtone's patented technologies are at the heart of Alexa, it does not provide any specific facts to support this allegation or explain why it is impossible for any Accused Product to have a substantial non-infringing use. *See generally* Dkt. # 1; *see also* Dkt. # 101 at 26–27. The Court also finds it implausible that the analysis for this element is the same for every Accused Product, as the services and devices listed in the Complaint, while all related to Alexa, appear to vary greatly in terms of functionalities, settings, and uses. The Complaint thus fails to state a plausible claim for

---

at *4 (D. Del. Dec. 19, 2018) (finding specific intent requirement not satisfied, as the complaint's citation to the defendants' website is too generic and the court "visited the website" and was "unable to find any instruction, direction or encouragement that would reasonably support such an inference"); *CyWee*, 312 F. Supp. 3d at 979–81 (finding specific intent requirement not satisfied because the complaint, while alleging that the defendant "continued to create and disseminate product manuals, instructions, and marketing materials," does not offer any "specific details about those promotional and instructional materials"); *IP Commc'n*, 2017 WL 1312942, at *4 (finding specific intent requirement not satisfied because the plaintiff "provides examples of webpages that relate to [the accused product] and customers' interaction with [it,]" but "fails to allege facts supporting how [the defendant] specifically instructed or directed customers to use the [accused product]" to infringe); *Network Sys. Techs., LLC v. Qualcomm Inc.*, 2023 WL 11833572, at *11 (W.D. Tex. July 21, 2023) (explaining that "general references to a purported infringer's website, without identifying any specific statements or materials in support, are not enough.").

post-suit contributory infringement as to any Asserted Patent, and so the Court dismisses these claims.

Lastly, for willful infringement, a complaint must allege that the defendant deliberately or intentionally infringed. *SRI*, 14 F.4th at 1330. But the Complaint does not contain any allegations concerning Defendants' post-suit conduct. *See generally* Dkt. # 1. The Court thus disagrees with Plaintiff's position that the Complaint pleads post-suit willful infringement. *See* Dkt. # 101 at 21 (urging the Court to deny the motion "at least as to post-suit . . . willfulness"). And so it dismisses such claims (to the extent they exist) under Rule 12(b)(6).

## IV
## Conclusion

For these reasons, the Court:

(1) GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (Dkt. # 98). The motion is GRANTED as to Plaintiff's induced, contributory, and willful infringement claims, and DENIED as to Plaintiff's direct infringement claims.

(2) DISMISSES WITHOUT PREJUDICE Plaintiff's pre-suit and post-suit induced, contributory, and willful infringement claims.

(3) GRANTS Plaintiff leave to amend with respect to any dismissed claims. Should Plaintiff wish to file an amended pleading, such pleading must be filed on or before November 13, 2026.

Dated this 23rd day of October, 2026.

John H. Chun
United States District Judge